**KIM, CHO & LIM, LLC**
Sean S. Kwak, Esq. (SK0112)
460 Bergen Boulevard, Suite 305
Palisades Park, NJ 07650
Tel: (201) 585-7400
Fax: (201) 585-7422
*Attorneys for Plaintiff*
seankwak@kcllawfirm.com

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JI WON HONG,<br><br>Plaintiff,<br><br>-against-<br><br>NEW YORK MEAT, INC. d/b/a Han Kook Meat, d/b/a Kono Chicken, HAN KOOK MEAT, INC. d/b/a Kono Chicken, NYM PRIME MARKET, INC., d/b/a Han Kook Meat, d/b/a Kono Chicken; RECEPTION HOUSE NEW YORK, INC., JONG HWAN NO, and JOHN DOES 1-10 (said names being fictitious ) and JOHN ROE CORP 1-10 (said names being fictitious),<br><br>Defendants. | Case No.:<br><br><br>CIVIL ACTION<br><br><br><br>**COMPLAINT** |

Plaintiff, Ji Won "Justin" Hong ("Plaintiff"), by and through his attorneys, Kim, Cho & Lim,

LLC, upon his personal knowledge, and upon information and belief as to other matters, aver

against Defendants, NEW YORK MEAT, INC. ("NYMI"), HAN KOOK MEAT, INC. ("HKMI"), NYM

PRIME MARKET, INC. ("NYMPMI") RECEPTION HOUSE NEW YORK, INC. ("RHNY"), JONG

HWAN NO ("Mr. No"), and JOHN DOES 1-10 (said names being fictitious ) and JOHN ROE

CORP 1-10 (said names being fictitious) (collectively, "Defendants"), as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this lawsuit as a non-exempt employee seeking recovery of unpaid minimum wage, overtime premium, and liquidated damages therefor under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL") and their supporting rules and regulations.

2.      Plaintiff brings this lawsuit also seeking recovery of unpaid spread of hours premium and liquidated damages therefor, as well as statutory damages for Defendants' violation of record-keeping and notice requirements under NYLL and its supporting regulations.

**PARTIES**

3.      Plaintiff is an individual residing at Oakland Gardens, New York.

4.      Defendant NYMI is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 355 Food Center Drive, #A19, Bronx, New York 10474.

5.      Defendant HKMI was and/or is a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 171-02 Northern Boulevard, Bayside, New York 11358.

6.      Defendant HKMI is, upon information and belief, inactive as of July 13, 2011 and its businesses "Han Kook Meat" and "Kono Chicken" has been continued by NYMPMI since.

7.      Defendant NYMPMI is a New York corporation organized and existing under the laws of the State of New York, with its principal place of business located at 171-02 Northern Boulevard, Bayside, New York 11358

8.      Tellingly, NYMPMI's name is derived from NYMI's corporate name: New York Meat Prime Market, Inc.; NYMPMI and NYMI share a close-knit operation and management by Mr. No.

2

9.      Defendant RHNY is a New York domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located at 167-17 Northern Boulevard, Flushing, New York 11358.

10.      Defendant Mr. No is the chief executive officer, president, principal, shareholder, officer, director, or otherwise authorized representative of all corporate Defendants.

11.      Defendants John Does 1-10 are, upon information and belief, individuals or sole proprietorship whose identities are unknown to Plaintiff at the filing of this Complaint, but who may be liable to Plaintiff, under the FLSA and NYLL.

12.      Defendants John Roe Corps 1-10 are, upon information and belief, businesses, companies, corporations, limited liability companies or partnerships, traditional partnerships, or other judicial, legal, or *de facto* entities whose identities are unknown to Plaintiff at the filing of this Complaint, but who may be liable to Plaintiff under the FLSA and NYLL.

13.      Defendants John Roe Corps 1-10 include a corporate entity doing business as, or which did business as, "Han Kook Meat" and "Kono Chicken" These entities are also legal entities under the control of Defendant Mr. No.

## JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction over Plaintiff's claims under the FLSA pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337.

15.      This Court has supplemental jurisdiction over Plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

16.      The venue is proper in the Southern District Court of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## DEFENDANTS WERE PLAINTIFF'S EMPLOYERS

17.     Defendants, NYMI, HKMI, NYMPMI, and RHNY, are legal entities jointly doing business as "New York Meat," "Han Kook Meat," "Kono Chicken," and the "Reception House" within the State of New York and New Jersey.

18.     Defendants hired and directed Plaintiff to perform work in their New York facilities, including at "New York Meat" at 355 Food Center Drive, #A19, Bronx, New York 10474, at "Han Kook Meat" and "Kono Chicken" located at 171-02 Northern Boulevard, Bayside, New York 11358, and "Reception House" at 167-17 Northern Boulevard, New York 11358.

19.     "New York Meat" is in the business of wholesale meat distribution.

20.     "Han Kook Meat" is in the business of retail sale of meat.

21.     "Kono Chicken" is in the business of retail sale of poultry and providing hospitality service, including by selling fried chicken, cooked port, French fries, and other eateries, and providing seating within its business premises; as such, Kono Chicken is a business in the hospitality industry as defined in 12 N.Y.C.R.R. § 146-3.1.

22.     The "Reception House" is in the business of providing venues for and hosting events, and also in food catering; as such, the Reception House is a business in the hospitality industry as defined in 12 N.Y.C.R.R. § 146-3.1.

23.     In each year of Plaintiff's employment with Defendants, each corporate Defendant had gross annual revenues of $500,000 or greater.

24.     In each year of Plaintiff's employment with Defendants, Defendants were engaged in the commerce of in the production of goods for commerce within the meaning of FLSA, 29 U.S.C. § 203(s).

25.     Defendants were Plaintiff's employers within the meaning of the FLSA, 29 U.S.C. § 203(d).

4

26.     Defendants were Plaintiff's employers within the meaning of NYLL, N.Y. Lab. Law §§ 651(6).

27.     All Corporate Defendants were under common ownership and constituted a joint enterprise. As such, each of the Corporate Defendants and its principal, Mr. No, were employers of Plaintiff with respect to Plaintiff's work at and for the business of all Defendants.

<u>CORPORATE DEFENDANTS</u>

28.     Each Corporate Defendant had the power to hire and fire Plaintiff, including at its respective business and at all other Corporate Defendants' businesses.

29.     Each Corporate Defendant had the power to set wages of Plaintiff, including at its respective business and at all other Corporate Defendants' businesses.

30.     Each Corporate Defendant had the power to control the work schedules and/or other conditions of employment of Plaintiff, including at its respective business and at all other Corporate Defendants' businesses.

31.     Each Corporate Defendant knew or should have known the applicable laws and regulations regarding the payment of minimum wage, overtime premium, and the spread of hours premium, as well as the statutory notice requirements.

32.     Notwithstanding, Corporate Defendants willfully acted in violation of the requirements of the laws and regulations regarding the payment of minimum wage, overtime premium, and the spread of hours premium, as well as the notice requirements.

33.     Corporate Defendants share the same ownership, same management, same employment policies; they also coordinated and collaboratively controlled, determined, and changed the work hours, work locations, and the wage rate of Plaintiff.

5

34.     Corporate Defendants had an arrangement among themselves to share Plaintiff's services, haphazardly directing Plaintiff to work at various locations as Corporate Defendants needed from time to time.

35.     Corporate Defendants made payments to Plaintiff for Plaintiff's work at various locations of Corporate Defendants' businesses, for and on behalf of one another.

<u>DEFENDANT JONG HWAN NO</u>

36.     Defendant Mr. No is the chief executive officer, president, principal, shareholder, officer, director, or otherwise authorized representative of all Corporate Defendants.

37.     Defendant Mr. No had the power to hire and fire Plaintiff at all business locations of the Corporate Defendants.

38.     Defendant Mr. No hired Plaintiff and asked him to return to work when he initially left his employ in October of 2018.

39.     Defendant Mr. No had the power to set wages of Plaintiff at all business locations of the Corporate Defendants.

40.     Defendant Mr. No determined all hourly wage rates and weekly salaries of Plaintiff as set forth herein.

41.     Defendant Mr. No had the power to control the work schedules and/or other conditions of employment of Plaintiff at all business locations of the Corporate Defendants.

42.     Defendant Mr. No relocated and directed Plaintiff to work at various locations of Defendants' business, from time to time, as his business needs arose.

43.     Defendant Mr. No controlled the method of payments made to Plaintiff.

44.     Defendant Mr. No held the power to sign company checks of each Corporate Defendant.

45.     Defendant Mr. No knew or should have known the applicable laws and regulations regarding the payment of minimum wage, overtime premium, and the spread of hours premium, as well as the notice requirement under the NYLL.

46.     Notwithstanding, Defendant Mr. No willfully acted in violation of the requirements of the laws and regulations regarding the payment of minimum wage, overtime premium, and the spread of hours premium, as well as the notice requirements.

**THE CONDITIONS OF PLAINTIFF'S EMPLOYMENT**

47.     Defendants, through Mr. No, first hired Plaintiff to work at "Kono Chicken" between July 2018.

48.     Plaintiff left Defendants' employ in October 2018, as Plaintiff was scheduled to leave the country.

49.     Satisfied with Plaintiff's work performance, Mr. No requested that Plaintiff returns to work at his businesses.

*Plaintiff's Work at "Han Kook Meat" and "Kono Chicken"*

50.     Plaintiff did return to work for Defendants on December 31, 2018 and worked at "Kono Chicken" and "Han Kook Meat" from December 31, 2018 through mid-November 2020, 7-days per week from 10:00 a.m. through 10:00 p.m., without any meaningful break, except to the extent it conflicted with other schedules assigned by Mr. No as set forth below.

51.     From mid-November 2020 through March 11, 2021, Plaintiff worked at "Kono Chicken" Mondays, Wednesdays, and Fridays from 7:00 p.m. through 10:00 p.m, and at "Han Kook Meat" on Tuesdays, Thursdays and Saturdays from 10:00 a.m. through 6:30 p.m. and on Sundays from 10:00 a.m. through 1:00 p.m, all without any meaningful break.

7

52.     Han Kook Meat and Kono Chicken are in the same building and thus, although the businesses operate under two separate trade names, constituted one entity and Plaintiff worked for both businesses simultaneously.

53.     Plaintiff would perform work to serve Han Kook Meat's customers then, the next minute, Plaintiff would walk a few steps over to Kono Chicken and serve the customers there, and vice versa.

54.     From the time of hire and until March 11, 2020 when the COVID-19 pandemic was declared, Plaintiff was paid $15 per hour for his work at both Kono Chicken and Han Kook Meat.

55.     Between March 12, 2020 and mid-November of 2020, Plaintiff was paid a fixed $600 weekly salary for all of his work hours at Han Kook Meat and $15 per hour for his work hours at Kono Chicken.

56.     Between mid-November of 2020 and March 11, 2021, Plaintiff was paid only $15 per hour for his work hours at Kono Chicken, only.

57.     Between mid-November of 2020 and March 11, 2021, Plaintiff's compensation for his work hours at Han Kook Meat was paid together with his weekly salary for his work at New York Meat.

58.     At all relevant times, Plaintiff was not paid any premium for overtime or spread of hours.

*Plaintiff's Work at "New York Meat"*

59.     Defendants, through Mr. No, hired Plaintiff at "New York Meat" beginning December 2, 2019 through May 21, 2021.

60.     Plaintiff began working as a delivery person, making deliveries and loading and unloading the goods delivered.

61.     Plaintiff did not work at New York Meat between March 13, 2020 through mid-November of 2020 during the peak of the COVID-19 pandemic.

62.     Plaintiff returned to work at New York Meat in mid-November of 2020, when Plaintiff also began to work fewer hours on Sundays at Kono Chicken and Han Kook Meat.

63.     Beginning on December 12, 2020, Plaintiff took on the duties of sales and customer care, as the person in charge of the same had either quit or been fired.

64.     In connection with his sale and customer care duties, Plaintiff was forced to work off-the-clock, including at home and during late nights, to prepare invoices, process purchase orders, take calls from New York Meat's customers, and collect payments.

65.     At all times, Plaintiff's workday for New York Meat began at 5:00 a.m. when Plaintiff picked up New York Meat's company vehicle parked at the Reception House's parking lot and ended at 5:00 p.m. when Plaintiff dropped off New York Meat's company vehicle at the same location.

66.     The company vehicle was a necessary tool for Plaintiff's work, to be used in connection with his delivery duties and also in visiting New York Meat's customers to collect payment and/or to provide other services on behalf of New York Meat.

67.     Plaintiff was not provided any meaningful break during his work hours at New York Meat.

68.     From December 2, 2019 through March 12, 2020, Plaintiff worked for Defendants at New York Meat Monday through Friday and was paid a fixed weekly salary of $700.

69.     Between mid-November of 2020 and December 11, 2020, Plaintiff worked on Mondays, Wednesdays, and Fridays, and was paid a fixed weekly salary of $700 ($500 by check

and $200 by cash) which, as Plaintiff understood, was also intended to compensate Plaintiff for his workhours at Han Kook Meat.

70.     From December 12, 2020 through March 11, 2021, Plaintiff continued to work Mondays, Wednesdays, and Fridays from 5:00 a.m. through 5:00 p.m. at New York Meat's office but also worked outside the office and outside his scheduled work hours on Tuesdays, Thursdays, Saturdays, and Sundays, after his work at Han Kook Meat, at an average of five (5) hours per week to take orders from, issue invoices to, and collect payments from New York Meat's retail customers.

71.     From December 12, 2020 through March 11, 2021, Plaintiff was paid a fixed weekly salary of $700 ($500 by check and $200 by cash) which, as Plaintiff understood, was also intended to compensate Plaintiff for his work hours at Han Kook Meat.

72.     From March 11, 2021 through May 21, 2021, Plaintiff continued to work Mondays, Wednesdays, and Fridays from 5:00 a.m. through 5:00 p.m. at New York Meat's office but also worked outside the office and outside his scheduled work hours on Tuesdays, Thursdays, Saturdays, and Sundays at an average of fifteen (15) hours per week to take orders from, issue invoices to, and collect payments from, as well as to make small urgent deliveries to, New York Meat's retail customers.

73.     Between March 12, 2021 through May 21, 2021, Plaintiff was paid a fixed weekly salary of $600 ($500 by check and $100 by cash).

74.     At all relevant times, Plaintiff was not paid any premium for overtime or spread of hours.

*Plaintiff's Work at the "Reception House"*

75.    At all times from December 31, 2018 through May 21, 2021, Defendants, through Mr. No, instructed Plaintiff to perform work at the "Reception House" on an as-needed basis when the Reception House hosted events at its venue.

76.    Each day Plaintiff was called to work at the Reception House as a server and/or waiter, Plaintiff was removed from his work schedules at Kono Chicken, Han Kook Meat, and New York Meat, without having to separately notify them because Mr. No oversaw the operations of all these businesses and the adjusted Plaintiff's work schedules accordingly.

77.    Each day Plaintiff was called to work at the Reception House in connection with an event, Plaintiff worked from 9:00 a.m. through as late as 2:00 a.m.

78.    For each day of his work, Plaintiff was paid in a range of $150-200 as tips from the patrons who Plaintiff served.

79.    Plaintiff was not provided with any tip credit notice or any documents informing him of his rights as a tipped employee.

80.    Between June 2, 2021 and December 1, 2019, in addition to these randomly scheduled workdays at the Reception House, Plaintiff was also directed to effect catering services on Mondays and Tuesdays from 8:00 a.m. through 2:00 p.m., and on Mondays through Thursdays from 5:00 p.m. through 7:00 p.m.

81.    For the foregoing work in connection with the Reception House's catering services, Plaintiff was paid only $200 per week.

*New York Labor Law Statutory Wage Notice and Wage Statements; Recordkeeping Violations*

82.    Plaintiff never received any wage notice setting forth the following information from any Defendants:

    a.  The rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other;

    b.  Allowances, if any, claimed as a part of the minimum wage, including tip, meal, or lodging allowances;

    c.  The regular payday designated by the employer;

    d.  The name of the employer;

    e.  Any "doing business as" names used by the employer;

    f.  The physical address of the employer's main office or principal place of business and a mailing address if different; and

    g.  The telephone number of the employer.

83.    During Plaintiff's employment, Defendants also never provided Plaintiff a wage statement with the payment of his wages stating the following information:

    a.  Dates of work covered by that payment of wages;

    b.  Name of the employee;

    c.  Name of the employer;

    d.  Address and phone number of the employer;

    e.  Rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other;

    f.  Gross wages;

    g.  Deductions;

    h.  Allowances, if any, claimed as a part of the minimum wage; and

    i.  Net wages.

84.     Due to Defendants' failure to provide Plaintiff such notices and statements, Plaintiff fell victim to Defendants' haphazard payment of Plaintiff's wages, not knowing his hourly rates or his overtime rates at each of his work locations.

85.     Plaintiff was, and still is, confused as to the identity of the entity operating each business Plaintiff worked for, except Plaintiff is aware that Mr. No is the principal of all of them.

86.     Upon information and belief, Defendants maintained Plaintiff's work hours while working at Kono Chicken, only, but not at any other business locations.

*Unreimbursed Expenses*

87.     At times, Plaintiff was not provided with Defendants' E-ZPass and was required to use his personal E-ZPass even while driving Defendants' company vehicle for work-related purposes.

88.     On March 11, 2021, Plaintiff sustained an injury that prevented him from making the deliveries and carrying heavy boxes as a part of his work for New York Meat and, as such, Plaintiff had a Hispanic employee of Kono Chicken, "Edwardo," help him with the delivery duties.

89.     For each day of Edwardo's help, Plaintiff had to pay him $50, for a total of approximately $150 per week.

90.     Defendants began to make payments to Edwardo only in mid-April of 2021, for approximately one month before Plaintiff separated from Defendants' employ.

91.     Defendants did not reimburse Plaintiff for his out-of-pocket payments made for the toll (total unknown at this time) and to Edwardo from March 12, 2021 through mid-April of 2021 (total approximately $600).

**FIRST CAUSE OF ACTION**
FLSA: UNPAID OVERTIME PREMIUM

92.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

93.     At all relevant times, Defendants maintained a gross annual revenue of $500,000.

94.     At all relevant times, Defendants were engaged in commerce or the production or sale of goods for commerce, within the meaning of 29 U.S.C. §§ 201, *et seq.*

95.     At all relevant times, Defendants were joint employers of Plaintiff as defined under 29 U.S.C. §§ 201, *et seq.*

96.     At all relevant times, Plaintiff was an employee of Defendants as defined under 29 U.S.C. §§ 201, *et seq.*

97.     During Plaintiff's employment with Defendants, Defendants failed to pay Plaintiff the required overtime premium at a rate not less than one and one-half (1 1/2) times the regular rate or the applicable minimum wage, whichever is higher, as required under 29. U.S.C. § 207(a)(1).

98.     Defendants' failure to pay Plaintiff the applicable overtime premium was willful within the meaning of 29 U.S.C. § 255(a).

99.     As a result of Defendants' failure to pay, Plaintiff suffered damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
NYLL: UNPAID OVERTIME PREMIUM

100.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

101.     At all relevant times, Defendants were Plaintiff's joint employers within the meaning of N.Y. Lab. Law § 651(6).

102.    At all relevant times, Plaintiff was Defendants' employees within the meaning of N.Y. Lab. Law § 651(5).

103.    During Plaintiff's employment with Defendants, Defendants failed to pay Plaintiff the applicable overtime premium at the rate of one and one half (1.5) times the regular rate or the minimum wage rate, whichever is higher, as required under 12 N.Y.C.R.R. § 142-2.2.

104.    Defendants' failure to pay Plaintiff the applicable overtime premium was without a good faith basis to believe that Defendants were in compliance with the law, within the meaning of N.Y. Lab. Law § 663.

105.    As a result of Defendants' failure to pay, Plaintiff suffered damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
NYLL: UNPAID MINIMUM WAGE

106.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

107.    At all relevant times, Defendants were Plaintiff's joint employers within the meaning of N.Y. Lab. Law § 651(6).

108.    At all relevant times, Plaintiff was Defendants' employees within the meaning of N.Y. Lab. Law § 651(5).

109.    During Plaintiff's employment with Defendants, Defendants failed to pay Plaintiff the applicable minimum wage prescribed and required under 12 N.Y.C.R.R. §§ 142-2.1 and 146-1.2.

110.    Defendants never provided Plaintiff with any tip credit notice and, as such, are not entitled to any tip credit against Plaintiff's wages.

111.    Defendants' failure to pay Plaintiff the applicable minimum wage was without a good faith basis to believe that Defendants were in compliance with the law, within the meaning of N.Y. Lab. Law § 663.

112.    As a result of Defendants' failure to pay, Plaintiff suffered damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
NYLL: UNPAID SPREAD OF HOUR PREMIUM

113.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

114.    At all relevant times, Defendants were Plaintiff's joint employers within the meaning of N.Y. Lab. Law § 651(6).

115.    At all relevant times, Plaintiff was Defendants' employees within the meaning of N.Y. Lab. Law § 651(5).

116.    During Plaintiff's employment with Defendants, Defendants failed to pay Plaintiff the applicable spread of hours premium for each day where the spread of hours, as defined in 12 N.Y.C.R.R. §§ 142-2.4 and 146-1.6, exceeded 10, as required under the same provision.

117.    Defendants' failure to pay Plaintiff the applicable spread of hours premium was without a good faith basis to believe that Defendants were in compliance with the law, within the meaning of N.Y. Lab. Law § 663.

118.    As a result of Defendants' failure to pay, Plaintiff suffered damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
NYLL: WAGE NOTICE VIOLATION

119.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

120.    At all relevant times, Defendants were Plaintiff's joint employers within the meaning of N.Y. Lab. Law § 651(6).

121.    At all relevant times, Plaintiff was Defendants' employee within the meaning of N.Y. Lab. Law § 651(5).

122.    During Plaintiff's employment with Defendants, Defendants failed to provide to Plaintiff a wage notice containing the information listed and as required under N.Y. Lab. Law § 195(1)(a).

123.    Plaintiff may recover in this action against each Defendant damages of fifty dollars ($50) for each workday he was not provided with the notice, but not to exceed a total of five thousand dollars ($5,000) each, together with costs and reasonable attorney's fees, as provided for under N.Y. Lab. Law § 198(1-b).

124.    As a result of Defendants' notice violations persisting through more than 100 workdays, Plaintiff is entitled to recover five thousand dollars ($5,000), plus costs and reasonable attorney's fees, against each Defendant.

## SIXTH CAUSE OF ACTION
NYLL: WAGE STATEMENT VIOLATION

125.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

126.    At all relevant times, Defendants were Plaintiff's joint employers within the meaning of N.Y. Lab. Law § 651(6).

127.    At all relevant times, Plaintiff was Defendants' employees within the meaning of N.Y. Lab. Law § 651(5).

128.     During Plaintiff's employment with Defendants, each Defendant failed to provide to Plaintiff a wage statement containing the information listed and as required under N.Y. Lab. Law § 195(3).

129.     Plaintiff may recover in this action damages of two hundred fifty dollars ($250) for each workday he was not provided with the statement, but not to exceed a total of five thousand dollars ($5,000) each, together with costs and reasonable attorney's fees, as provided for under N.Y. Lab. Law § 198(1-d).

130.     As a result of each Defendant's notice violations persisting over more than 20 days, Plaintiff is entitled to recover five thousand dollars ($5,000), plus costs and reasonable attorney's fees, against each Defendant.

## SEVENTH CAUSE OF ACTION
### UNREIMBURSED WORK-RELATED COSTS

131.     Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

132.     Plaintiff incurred costs, including tolls for Defendants' company vehicle and in obtaining help making deliveries as a critical and essential part of Defendants' business, in an amount not less than $600.

133.     Defendants failed to provide reimbursement of the foregoing costs to Plaintiff.

134.     As a result of Defendants' failure to pay, Plaintiff suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

a.   Declaration that Defendants' practices complained herein were unlawful practices;

b.  Declaration that each and every Defendant are individually, jointly, and severally liable for all Defendants' violations of Fair Labor Standards Act, the New York Labor Law, and regulations promulgated under these statutes and damaged awarded therefor;

c.  Declaration that Defendants' violations of the Fair Labor Standards Act were willful within the meaning of 29 U.S.C. § 255(a);

d.  Declaration that Defendants are liable to Plaintiff for unpaid overtime premium pursuant to the Fair Labor Standards Act and its supporting regulations;

e.  Declaration that Defendants are liable to Plaintiff for unpaid overtime wage pursuant to the New York Labor Law, the Minimum Wage Order for Miscellaneous Industries and Occupations, and the Hospitality Industry Wage Order;

f.  Declaration that Defendants are liable to Plaintiff for unpaid minimum wage pursuant to the New York Labor Law, the Minimum Wage Order for Miscellaneous Industries and Occupations, and the Hospitality Industry Wage Order;

g.  Declaration that Defendants are liable to Plaintiff for the unpaid spread of hours premium under the New York Labor Law and the Minimum Wage Order for Miscellaneous Industries and Occupations, and the Hospitality Industry Wage Order;

h.  Declaration that Defendants' violations of the New York Labor Law were willful and without a good faith basis to believe that Defendants were in compliance with the law, within the meaning of N.Y. Lab. Law § 663;

i.  Award of all unpaid minimum wage, overtime premium, and spread of hours premium pursuant to the Fair Labor Standards Act, the New York Labor Law, and their supporting regulations;

j.  Award of liquidated damages in an amount equal to one hundred percent (100%) of the total underpayment found to be due under the FLSA and NYLL and their supporting regulations, including unpaid minimum wage, overtime premium and unpaid spread of hours premium;

k.  Award of statutory damages of five thousand dollars ($5,000) pursuant to NYLL § 198(1-b) from each Defendant for each Defendant's respective failure to provide wage notices as required under the New York Labor Law and its supporting regulations;

l.  Award of statutory damages of five thousand dollars ($5,000) pursuant to NYLL § 198(1-d) from each Defendant for each Defendant's their respective failure to provide wage notices as required under the New York Labor Law and its supporting regulations;

m.  Award of reasonable attorney's fees and costs incurred in this litigation;

n.  Award of prejudgment interest in accordance with NY CPLR 5004;

o.  Such other statutory and equitable relief as this Court shall deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: Palisades Park, New Jersey
      October 6, 2021

Respectfully submitted,

By:  */s/ Sean S. Kwak*
    KIM, CHO & LIM, LLC
    Sean S. Kwak, Esq. (SK0112)
    460 Bergen Boulevard, Suite 305
    Palisades Park, NJ 07650
    Tel: (201) 585-7400
    Fax: (201) 585-7422
    *Attorneys for Plaintiff*
    seankwak@kcllawfirm.com